UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.:

HOWARD COHAN,

     Plaintiff,

vs.                                                                              INJUNCTIVE RELIEF SOUGHT

VILLAGIO OF SAWGRASS, INC.,
a Florida Profit Corporation;
IL BELLAGIO, INC.,
a Florida Profit Corporation;
CARPACCIO, INC.,
a Florida Profit Corporation;
     Defendant(s).
_____/

## **COMPLAINT**

Plaintiff, HOWARD COHAN ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint and sues VILLAGIO OF SAWGRASS, INC., a Florida Profit Corporation, IL BELLAGIO, INC., a Florida Profit Corporation, and CARPACCIO, INC., a Florida Profit Corporation, ("Defendants"), for declaratory and injunctive relief, attorneys' fees, expenses and costs (including, but not limited to, court costs and expert fees) pursuant to 42 U.S.C. § 12182 et. seq., and the 2010 Americans with Disabilities Act ("ADA") and alleges as follows:

## **JURISDICTION AND VENUE**

1.      This Court is vested with original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 343 for Plaintiff's claims arising under Title 42 U.S.C. § 12182 et. seq., based on Defendant's violations of Title III of the ADA.  *See also,* 28 U.S.C. §§ 2201, 2202, as well as the 2010 ADA Standards.

2.     Additionally, this is a complaint for breach of contract and injunctive relief seeking enforcement of Settlement Agreements reached in the following cases:

    a.   HOWARD COHAN v. VILLAGIO OF SAWGRASS, INC., 16-CV-60046-DIMITROULEAS/SNOW (S.D. Fla.) (dismissed by order upon settlement) which arose out of Plaintiff's claim of discrimination caused by certain barriers encountered by Plaintiff on Defendant's properties that prevented Plaintiff from the full and equal enjoyment of places of public accommodation in violation of Title III of the Americans with Disabilities Act. See Exhibit A for a copy of the Settlement Agreement and Release.

    b.   HOWARD COHAN v. IL BILLAGIO, INC., INC., 15-CV-81588-BB (S.D. Fla.) (dismissed by order upon settlement) which arose out of Plaintiff's claim of discrimination caused by certain barriers encountered by Plaintiff on Defendant's properties that prevented Plaintiff from the full and equal enjoyment of places of public accommodation in violation of Title III of the Americans with Disabilities Act. See Exhibit B for a copy of the Settlement Agreement and Release.

    c.   HOWARD COHAN v. CARPACCIO, INC., 15-CV-226699 (S.D. Fla.) (dismissed by order upon settlement) which arose out of Plaintiff's claim of discrimination caused by certain barriers encountered by Plaintiff on Defendant's properties that prevented Plaintiff from the full and equal enjoyment of places of public accommodation in violation of Title III of the Americans with Disabilities Act. See Exhibit C for a copy of the Settlement Agreement and Release.

3.     Venue is proper in this Court, West Palm Beach Division, pursuant to 28 U.S.C. § 1391(B) and Internal Operating Procedures for the United States District Court For the Southern

District of Florida in that a majority of events giving rise to the lawsuit occurred in Palm Beach County, Florida.

## PARTIES

4.     Plaintiff, HOWARD COHAN is *sui juris* and is a resident of the State of Florida residing in Palm Beach County, Florida.

5.     Upon information and belief, Defendants are the lessees, operators, owners and lessors of the Real Properties, which are subject to this suit, and are located at:

    a.  1760 Sawgrass Mills Circle, Sunrise, Florida 33323 (hereinafter "VILLAGIO SAWGRASS");

    b.  600 S. Rosemary Ave., #170, West Palm Beach, Florida 33401 (hereinafter "IL BELLAGIO");

    c.  9700 Collins Ave., #139, Bal Harbour, Florida 33154 (hereinafter "CARPACCIO BAL HARBOUR"); and

and are the owners of the improvements where each property is located. The Real Properties are hereinafter collectively referred to as "Premises."

6.     Defendants are authorized to conduct, and is in fact conducting, business within the State of Florida.

7.     Plaintiff is an individual with numerous permanent disabilities including severe spinal stenosis of the lumbar spine with spondylolisthesis; severe spinal stenosis of the cervical spine with nerve root compromise on the right side; a non-union fracture of the left acromion (shoulder); a labral tear of the left shoulder; a full thickness tear of the right rotator cuff; a right knee medial meniscal tear; a repaired ACL and bilateral meniscal tear of the left knee; and severe basal joint arthritis of the left thumb.  The above listed permanent disabilities and symptoms cause

sudden onsets of severe pain and substantially limit Plaintiff's major life activities. As such, Plaintiff suffered from a "qualified disability" under the ADA. 42 U.S.C § 12101, *et seq.*

## FACTUAL ALLEGATIONS AS TO VILLAGIO OF SAWGRASS, INC.

8.      Upon information and belief, Defendant, VILLAGIO OF SAWGRASS, INC. is the lessee, operator, owner and lessor of the Real Property, which is subject to this suit, and is located at 1760 Sawgrass Mills Circle, Sunrise, Florida 33323, ("Sawgrass Premises"), and is the owner of the improvements where Sawgrass Premises is located.

9.      Plaintiff visited Defendant's Sawgrass Premises on January 4, 2016.

10.      At the time of Plaintiff's visit to the Sawgrass Premises, Plaintiff required the use of fully accessible restrooms; fully accessible paths of travel throughout the facility; and fully accessible service and eating areas. Plaintiff personally visited the Sawgrass Premises, but was denied full and equal access and full and equal enjoyment of the facilities, services, goods, and amenities within the Sawgrass Premises, even though he was a "bona fide patron".

11.      Defendant's Sawgrass Premises are places of public accommodation as defined by Title III of the ADA and as such is governed by the ADA.

12.      On or about January 8, 2016, Plaintiff filed a lawsuit against Defendant seeking to force Defendant to comply with the ADA and applicable regulations thereto. See HOWARD COHAN v. VILLAGIO OF SAWGRASS, INC, 16-CV-60046-DIMITROULEAS/SNOW (S.D. Fla.)

13.      On or about July 29, 2016, Plaintiff's suit was dismissed upon stipulation and notice to the U.S. District Court that the parties had settled.

14.      In connection with said dismissal, Plaintiff and Defendant entered into a Settlement Agreement and Release (Exhibit A) on or about July 27, 2016.

15.     The Settlement Agreement and Release required Defendant to complete all modifications to the Sawgrass Premises by on or about July 28, 2017.

16.     Defendant has failed to complete the required modification(s) to the Sawgrass Premises as required by the ADA and the Settlement Agreement and Release and Defendant has failed to give notice of any reasons or documentation for non-compliance.

17.     Plaintiff again personally visited Defendant's Sawgrass Premises on the following dates (and prior to instituting this action): February 9, 2018, November 21, 2019, and December 10, 2019.

18.     Plaintiff required the use of fully accessible restrooms; fully accessible paths of travel throughout the facility; and fully accessible service and eating areas. Plaintiff was denied full and equal access and full and equal enjoyment of the facilities, services, goods, and amenities within the Sawgrass Premises, even though he was a "bona fide patron".

19.     Plaintiff, in his individual capacity, has shown that he will absolutely return to the Sawgrass Premises and avail himself of the services offered when Defendant modifies the Sawgrass Premises or modifies the policies and practices to accommodate individuals who have physical disabilities.

20.     On September 10, 2021, Plaintiff sent a Time-Sensitive Notice to Counsel for Defendant as identified in the Settlement Agreement and Release advising of ongoing non-compliance with the Settlement Agreement as well as additional barriers to access in violation of the ADA with respect to the Sawgrass Premises.

21.     Plaintiff is continuously aware of the violations at Defendant's Sawgrass Premises and is aware that it would be a futile gesture to return to the Sawgrass Premises as long as those violations exist, and Plaintiff is not willing to suffer additional discrimination.

22.     Plaintiff has suffered, and will continue to suffer, direct and indirect injury as a result of Defendant's discrimination until Defendant is compelled to comply with the requirements of the ADA.

23.     Plaintiff would like to be able to be a patron of the Sawgrass Premises in the future and be able to enjoy the goods and services that are available to the able-bodied public, but is currently precluded from doing so as a result of Defendant's discriminatory conduct as described herein. Plaintiff will continue to be precluded from using the Sawgrass Premises until corrective measures are taken at the Sawgrass Premises to eliminate the discrimination against persons with physical disabilities.

24.     Completely independent of the personal desire to have access to these places of public accommodation free of illegal barriers to access, Plaintiff also acts as a "tester" for the purpose of discovering, encountering and engaging discrimination against the disabled in public accommodations. When acting as a "tester", Plaintiff employs a routine practice. Plaintiff personally visits the public accommodation; engages all of the barriers to access, or at least of those that Plaintiff is able to access; tests all of those barriers to access to determine whether and the extent to which they are illegal barriers to access; proceeds with legal action to enjoin such discrimination; and subsequently returns to Sawgrass Premises to verify its compliance or non-compliance with the ADA and to otherwise use the public accommodation as members of the able-bodied community are able to do.  Independent of other subsequent visits, Plaintiff also intends to visit the Sawgrass Premises regularly to verify Defendant's compliance or non-compliance with the ADA, and Defendant's maintenance of the accessible features of the Sawgrass Premises. In this instance, Plaintiff, in Plaintiff's individual capacity and as a "tester", visited Sawgrass Premises, encountered barriers to access at Sawgrass Premises, and engaged and tested those

barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access and the ADA violations set forth herein.  It is Plaintiff's belief that said violations will not be corrected without Court intervention, and thus Plaintiff will suffer legal harm and injury in the near future.

25.     Plaintiff, in his capacity as a tester, will absolutely return to the Sawgrass Premises when Defendant modifies the Sawgrass Premises or modifies the policies and practices to accommodate individuals who have physical disabilities to confirm said modifications have been completed in accordance with the requirements of the ADA.

## **FACTUAL ALLEGATOINS AS TO IL BELLAGIO, INC.**

26.     Upon information and belief, Defendant, IL BELLAGIO, INC. is the lessee, operator, owner and lessor of the Real Property, which is subject to this suit, and is located at 600 S. Rosemary Ave., #170, West Palm Beach, Florida 33401, ("WPB Premises"), and is the owner of the improvements where WPB Premises is located.

27.     Plaintiff visited Defendant's WPB Premises on October 21, 2015.

28.     At the time of Plaintiff's visit to the WPB Premises, Plaintiff required the use of fully accessible restrooms; fully accessible paths of travel throughout the facility; and fully accessible service and eating areas. Plaintiff personally visited the WPB Premises, but was denied full and equal access and full and equal enjoyment of the facilities, services, goods, and amenities within the WPB Premises, even though he was a "bona fide patron".

29.     Defendant's WPB Premises are places of public accommodation as defined by Title III of the ADA and as such is governed by the ADA.

30.     On or about November 19, 2015, Plaintiff filed a lawsuit against Defendant seeking to force Defendant to comply with the ADA and applicable regulations thereto. See HOWARD COHAN v. IL BELLAGIO, INC, 15-CV-81588-BB (S.D. Fla.)

31.     On or about February 8, 2016, Plaintiff's suit was dismissed upon stipulation and notice to the U.S. District Court that the parties had settled.

32.     In connection with said dismissal, Plaintiff and Defendant entered into a Settlement Agreement and Release (Exhibit B) on or about February 2, 2016.

33.     The Settlement Agreement and Release required Defendant to complete all modifications to the WPB Premises by on or about February 2, 2017.

34.     Defendant has failed to complete the required modification(s) to the WPB Premises as required by the ADA and the Settlement Agreement and Release and Defendant has failed to give notice of any reasons or documentation for non-compliance.

35.     Plaintiff again personally visited Defendant's WPB Premises on the following dates (and prior to instituting this action): February 14, 2020.

36.     Plaintiff required the use of fully accessible restrooms; fully accessible paths of travel throughout the facility; and fully accessible service and eating areas. Plaintiff was denied full and equal access and full and equal enjoyment of the facilities, services, goods, and amenities within the Premises, even though he was a "bona fide patron".

37.     Plaintiff, in his individual capacity, has shown that he will absolutely return to the WPB Premises and avail himself of the services offered when Defendant modifies the WPB Premises or modifies the policies and practices to accommodate individuals who have physical disabilities.

38.     On September 10, 2021, Plaintiff sent a Time-Sensitive Notice to Counsel for Defendant as identified in the Settlement Agreement and Release advising of ongoing non-compliance with the Settlement Agreement as well as additional barriers to access in violation of the ADA with respect to the WPB Premises.

39.     Plaintiff is continuously aware of the violations at Defendant's WPB Premises and is aware that it would be a futile gesture to return to the WPB Premises as long as those violations exist, and Plaintiff is not willing to suffer additional discrimination.

40.     Plaintiff has suffered, and will continue to suffer, direct and indirect injury as a result of Defendant's discrimination until Defendant is compelled to comply with the requirements of the ADA.

41.     Plaintiff would like to be able to be a patron of the WPB Premises in the future and be able to enjoy the goods and services that are available to the able-bodied public, but is currently precluded from doing so as a result of Defendant's discriminatory conduct as described herein. Plaintiff will continue to be precluded from using the WPB Premises until corrective measures are taken at the WPB Premises to eliminate the discrimination against persons with physical disabilities.

42.     Completely independent of the personal desire to have access to these places of public accommodation free of illegal barriers to access, Plaintiff also acts as a "tester" for the purpose of discovering, encountering and engaging discrimination against the disabled in public accommodations. When acting as a "tester", Plaintiff employs a routine practice. Plaintiff personally visits the public accommodation; engages all of the barriers to access, or at least of those that Plaintiff is able to access; tests all of those barriers to access to determine whether and the extent to which they are illegal barriers to access; proceeds with legal action to enjoin such

discrimination; and subsequently returns to WPB Premises to verify its compliance or non-compliance with the ADA and to otherwise use the public accommodation as members of the able-bodied community are able to do.  Independent of other subsequent visits, Plaintiff also intends to visit the WPB Premises regularly to verify Defendant's compliance or non-compliance with the ADA, and Defendant's maintenance of the accessible features of Premises. In this instance, Plaintiff, in Plaintiff's individual capacity and as a "tester", visited WPB Premises, encountered barriers to access at WPB Premises, and engaged and tested those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access and the ADA violations set forth herein.  It is Plaintiff's belief that said violations will not be corrected without Court intervention, and thus Plaintiff will suffer legal harm and injury in the near future.

43.    Plaintiff, in his capacity as a tester, will absolutely return to the WPB Premises when Defendant modifies the Premises or modifies the policies and practices to accommodate individuals who have physical disabilities to confirm said modifications have been completed in accordance with the requirements of the ADA.

## FACTUAL ALLEGATIONS AS TO CARPACCIO, INC. ("CARPACCIO BAL HARBOUR")

44.    Upon information and belief, Defendant, CARPACCIO, INC. is the lessee, operator, owner and lessor of the Real Property, which is subject to this suit, and is located at 9700 Collins Ave., #139, Bal Harbour, Florida 33154, ("Bal Harbour Premises"), and is the owner of the improvements where Bal Harbour Premises is located.

45.    Plaintiff visited Defendant's Bal Harbour Premises on June 15, 2015.

46.    At the time of Plaintiff's visit to the Bal Harbour Premises, Plaintiff required the use of fully accessible restrooms; fully accessible paths of travel throughout the facility; and fully

accessible service and eating areas. Plaintiff personally visited the Bal Harbour Premises, but was denied full and equal access and full and equal enjoyment of the facilities, services, goods, and amenities within the Premises, even though he was a "bona fide patron".

47.     Defendant's Bal Harbour Premises are places of public accommodation as defined by Title III of the ADA and as such is governed by the ADA.

48.     On or about July 16, 2015, Plaintiff filed a lawsuit against Defendant seeking to force Defendant to comply with the ADA and applicable regulations thereto. See HOWARD COHAN v. CARPACCIO, INC, 15-CV-226699 (S.D. Fla.)

49.     On or about December 15, 2015, Plaintiff's suit was dismissed upon stipulation and notice to the U.S. District Court that the parties had settled.

50.     In connection with said dismissal, Plaintiff and Defendant entered into a Settlement Agreement and Release (Exhibit C) on or about February 10, 2016.

51.     The Settlement Agreement and Release required Defendant to complete all modifications to the Bal Harbour Premises by on or about February 10, 2017.

52.     Defendant has failed to complete the required modification(s) to the Bal Harbour Premises as required by the ADA and the Settlement Agreement and Release and Defendant has failed to give notice of any reasons or documentation for non-compliance.

53.     Plaintiff again personally visited Defendant's Bal Harbour Premises on the following dates (and prior to instituting this action): November 1, 2017, December 5, 2018, November 25, 2019, and February 22, 2021.

54.     Plaintiff required the use of fully accessible restrooms; fully accessible paths of travel throughout the facility; and fully accessible service and eating areas. Plaintiff was denied

full and equal access and full and equal enjoyment of the facilities, services, goods, and amenities within the Premises, even though he was a "bona fide patron".

55.     Plaintiff, in his individual capacity, has shown that he will absolutely return to the Bal Harbour Premises and avail himself of the services offered when Defendant modifies the Bal Harbour Premises or modifies the policies and practices to accommodate individuals who have physical disabilities.

56.     On September 10, 2021, Plaintiff sent a Time-Sensitive Notice to Counsel for Defendant as identified in the Settlement Agreement and Release advising of ongoing non-compliance with the Settlement Agreement as well as additional barriers to access in violation of the ADA with respect to the Bal Harbour Premises.

57.     Plaintiff is continuously aware of the violations at Defendant's Bal Harbour Premises and is aware that it would be a futile gesture to return to the Bal Harbour Premises as long as those violations exist, and Plaintiff is not willing to suffer additional discrimination.

58.     Plaintiff has suffered, and will continue to suffer, direct and indirect injury as a result of Defendant's discrimination until Defendant is compelled to comply with the requirements of the ADA.

59.     Plaintiff would like to be able to be a patron of the Bal Harbour Premises in the future and be able to enjoy the goods and services that are available to the able-bodied public, but is currently precluded from doing so as a result of Defendant's discriminatory conduct as described herein. Plaintiff will continue to be precluded from using the Bal Harbour Premises until corrective measures are taken at the Bal Harbour Premises to eliminate the discrimination against persons with physical disabilities.

60.     Completely independent of the personal desire to have access to these places of public accommodation free of illegal barriers to access, Plaintiff also acts as a "tester" for the purpose of discovering, encountering and engaging discrimination against the disabled in public accommodations. When acting as a "tester", Plaintiff employs a routine practice. Plaintiff personally visits the public accommodation; engages all of the barriers to access, or at least of those that Plaintiff is able to access; tests all of those barriers to access to determine whether and the extent to which they are illegal barriers to access; proceeds with legal action to enjoin such discrimination; and subsequently returns to Bal Harbour Premises to verify its compliance or non-compliance with the ADA and to otherwise use the public accommodation as members of the able-bodied community are able to do.  Independent of other subsequent visits, Plaintiff also intends to visit the Bal Harbour Premises regularly to verify Defendant's compliance or non-compliance with the ADA, and Defendant's maintenance of the accessible features of Premises. In this instance, Plaintiff, in Plaintiff's individual capacity and as a "tester", visited Bal Harbour Premises, encountered barriers to access at Bal Harbour Premises, and engaged and tested those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access and the ADA violations set forth herein.  It is Plaintiff's belief that said violations will not be corrected without Court intervention, and thus Plaintiff will suffer legal harm and injury in the near future.

61.     Plaintiff, in his capacity as a tester, will absolutely return to the Bal Harbour Premises when Defendant modifies the Premises or modifies the policies and practices to accommodate individuals who have physical disabilities to confirm said modifications have been completed in accordance with the requirements of the ADA.

## COUNT I
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

62.     Plaintiff adopts and re-alleges the allegations stated in paragraphs 1 through 70 above as if fully stated herein.

63.     On July 26, 1990, Congress enacted the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et. seq. Commercial enterprises were provided one and a half (1.5) years from enactment of the statute to implement its requirements.  The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993 if Defendant(s) have ten (10) or fewer employees and gross receipts of $500,000.00 or less. *See* 42 U.S.C. § 12182; 28 C.F.R. § 36.508(a).

64.     Congress found, among other things, that:

a.   some 43,000,000 Americans have one or more physical or mental disabilities, and this number shall increase as the population continues to grow older;

b.   historically, society has tended to isolate and segregate individuals with disabilities and, despite some improvements, such forms of discrimination against disabled individuals continue to be a pervasive social problem, requiring serious attention;

c.   discrimination against disabled individuals persists in such critical areas as employment, housing, public accommodations, transportation, communication, recreation, institutionalization, health services, voting and access to public services and public facilities;

d.   individuals with disabilities continually suffer forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, failure to make modifications to existing facilities and practices. Exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, benefits, or other opportunities; and,

e.  the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our country is justifiably famous, and accosts the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1)-(3),(5) and (9).

65.     Congress explicitly stated that the purpose of the ADA was to:

a.  provide a clear and comprehensive national mandate for elimination of discrimination against individuals with disabilities;

b.  provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

c.  invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced on a daily basis by people with disabilities.

U.S.C. § 12101(b)(1)(2) and (4).

66.     Pursuant to 42 U.S.C. § 12182(7), 28 C.F.R. § 36.104 and the 2010 ADA Standards, Defendant's Premises are places of public accommodation covered by the ADA by the fact they provide services to the general public and must be in compliance therewith.

67.     Defendant has discriminated and continues to discriminate against Plaintiff and others who are similarly situated, by denying access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations located at the Premises, as prohibited by 42 U.S.C. § 12182 and 42 U.S.C. § 12101 et. seq., and by failing to remove architectural barriers pursuant to 42 U.S.C. § 12182(b)(2)(A)(iv).

68.     Plaintiff has visited Premises, and has been denied full and safe equal access to the facilities and therefore suffered an injury in fact.

69.     Plaintiff would like to return and enjoy the goods and/or services at Premises on a spontaneous, full and equal basis. However, Plaintiff is precluded from doing so by the Defendant's failure and refusal to provide disabled persons with full and equal access to its facilities. Therefore, Plaintiff continues to suffer from discrimination and injury due to the architectural barriers that are in violation of the ADA.

70.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General promulgated Federal Regulations to implement the requirements of the ADA. *See* 28 C.F.R. § 36 and its successor the 2010 ADA Standards ADA Accessibility guidelines (hereinafter referred to as "ADAAG"), 28 C.F.R. § 36, under which said Department may obtain civil penalties of up to $55,000.00 for the first violation and $110,000.00 for any subsequent violation.

71.     Based on a preliminary inspection of the Premises, Defendant is in violation of 42 U.S.C. § 12182 et. seq. and the 2010 American Disabilities Act Standards et. seq., and is discriminating against Plaintiff as a result of, inter alia, the following specific violations:

I.      **VILLAGIO SAWGRASS**

**Men's Restroom - General**

a.  Providing a gate or door with a continuous opening pressure of greater than 5 lbs. exceeding the limits for a person with a disability in violation of 2010 ADAAG §§ 404, 404.1, 404.2, 404.2.9 and 309.4.

b.  Failure to provide the proper insulation or protection for plumbing or other sharp or abrasive objects under a sink or countertop in violation of 2010 ADAAG §§ 606 and 606.5.

c.  Failure to provide mirror(s) located above lavatories or countertops at the proper height above the finished floor in violation of 2010 ADAAG §§ 603 and 603.3.

d.  Providing sinks and/or countertops that are greater than the 34-inch maximum allowed above the finished floor or ground in violation of 2010 ADAAG §§606 and 606.3.

e.  Failure to provide the operable part of a hand dryer at the correct height above the finished floor in violation of 2010 ADAAG §§606, 606.1 and 308.

**Men's Restroom – Accessible Stall**

f.  Failure to provide the proper spacing between a grab bar and an object projecting out of the wall in violation of 2010 ADAAG §§ 609, 609.1 and 609.3 (toilet seat cover dispenser).

g.  Failure to provide a dispenser in an accessible position (back wall or other inaccessible place) so that it can be reached by a person with a disability in violation of 2010 ADAAG §§ 606, 606.1, 308 and 308.2.2 (toilet seat cover dispenser).

h.  Failure to provide the water closet in the proper position relative to the side wall or partition in violation of 2010 ADAAG §§ 604 and 604.2.

i.  Failure to provide toilet paper dispensers in the proper position in front of the water closet or at the correct height above the finished floor in violation of 2010 ADAAG §§ 604, 604.7 and 309.4.

j.  Failure to provide the proper insulation or protection for plumbing or other sharp or abrasive objects under a sink or countertop in violation of 2010 ADAAG §§ 606 and 606.5.

k.  Failure to provide a coat hook within the proper reach ranges for a person with a disability in violation of 2010 ADAAG §§ 603, 603.4 and 308.

l.  Failure to provide the water closet seat at the correct height above the finished floor in violation of 2010 ADAAG §§ 604 and 604.4.

m.  Failure to provide proper knee clearance for a person with a disability under a counter or sink element in violation of 2010 ADAAG §§ 306, 306.1 306.3, 606 and 606.2

n.  Failure to provide sufficient clear floor space around a water closet without any obstructing elements in this space in violation of 2010 ADAAG §§4.22.3, 603, 603.2.3, 604, 604.3 and 604.3.1 (trash can and chair).

**Seating – Inside Bar and Restaurant**

o.  Failure to provide accessible seating for person(s) with a disability at a bar or adjacent table in the bar area, recreational area or a table area adjacent to a pool for food or beverage service, or at a computer work surface such as in a business center, in violation of 2010 ADAAG §§ 902, 902.1, 902.2, 902.3, 305, 306 and/or §4.32.4 of the 1991 ADA Standards.

p.  Failure to provide seating for a person(s) with a disability that has the correct clear floor space for forward approach in violation of 2010 ADAAG §§ 902, 902.2, 305 and 306.

q. Failure to provide a sufficient amount of seating when dining surfaces are provided for the consumption of food or drink for a person(s) with a disability in violation of 2010 ADAAG §§ 226, 226.1, 902, 305 and 306.

**Seating - Exterior**

r. Failure to provide seating for a person(s) with a disability that has the correct clear floor space for forward approach in violation of 2010 ADAAG §§ 902, 902.2, 305 and 306.

s. Failure to provide a sufficient amount of seating when dining surfaces are provided for the consumption of food or drink for a person(s) with a disability in violation of 2010 ADAAG §§ 226, 226.1, 902, 305 and 306.

II. **IL BELLAGIO**

**Men's Restroom**

a. Failure to provide sufficient clear floor space around a water closet without any obstructing elements in this space in violation of 2010 ADAAG §§4.22.3, 603, 603.2.3, 604, 604.3 and 604.3.1 (trash can).

b. Failure to provide the proper spacing between a grab bar and an object projecting out of the wall in violation of 2010 ADAAG §§ 609, 609.1 and 609.3 (plumbing).

c. Failure to provide toilet paper dispensers in the proper position in front of the water closet or at the correct height above the finished floor in violation of 2010 ADAAG §§ 604, 604.7 and 309.4.

**Outdoor Seating**

d.  Failure to provide seating for a person(s) with a disability that has the correct clear floor space for forward approach in violation of 2010 ADAAG §§ 902, 902.2, 305 and 306.

e.  Failure to provide a sufficient amount of seating when dining surfaces are provided for the consumption of food or drink for a person(s) with a disability in violation of 2010 ADAAG §§ 226, 226.1, 902, 305 and 306.

f.  Failure to provide a sufficient dispersion of seating thought the facility when dining surfaces are provided for the consumption of food or drink for a person(s) with a disability in violation of 2010 ADAAG §§ 226, 226.2, 902, 305 and 306.

## III.  CARPACCIO BAL HARBOR

**Unisex Restroom #1 (closest to kitchen)**

a.  Failure to provide the proper spacing between a grab bar and an object projecting out of the wall in violation of 2010 ADAAG §§ 609, 609.1 and 609.3 (plumbing).

b.  Failure to provide the proper spacing between a grab bar and an object projecting out of the wall in violation of 2010 ADAAG §§ 609, 609.1 and 609.3 (toilet cleaning device).

c.  Failure to provide mirror(s) located above lavatories or countertops at the proper height above the finished floor in violation of 2010 ADAAG §§ 603 and 603.3.

d.  Failure to provide rear and side grab bars at 33 inches minimum and 36 inches maximum above the finished floor measured to the top of the gripping surface in violation of 2010 ADAAG §§ 609, 609.4 and 609.7.

e.  Failure to provide a coat hook within the proper reach ranges for a person with a disability in violation of 2010 ADAAG §§ 603, 603.4 and 308.

f.   Failure to provide the proper insulation or protection for plumbing or other sharp or abrasive objects under a sink or countertop in violation of 2010 ADAAG §§ 606 and 606.5.

g.   Providing grab bars of improper horizontal length or spacing as required along the side wall in violation of 2010 ADAAG §§ 604, 604.5, 604.5.1 and 604.5.2.

h.   Providing grab bars of improper horizontal length or spacing as required along the rear wall in violation of 2010 ADAAG §§ 604, 604.5, 604.5.1 and 604.5.2.

i.   Failure to provide toilet paper dispensers in the proper position in front of the water closet or at the correct height above the finished floor in violation of 2010 ADAAG §§ 604, 604.7 and 309.4.

j.   Failure to provide sufficient clear floor space around a water closet without any obstructing elements in this space in violation of 2010 ADAAG §§4.22.3, 603, 603.2.3, 604, 604.3 and 604.3.1 (trash can).

k.   Failure to provide operable parts that are functional or are in the proper reach ranges as required for a person with a disability in violation of 2010 ADAAG §§ 309, 309.1, 309.3, 309.4 and 308 (door handle).

l.   Failure to provide proper signage for an accessible restroom or failure to redirect a person with a disability to the closest available accessible restroom facility in violation of 2010 ADAAG §§ 216, 216.2, 216.6, 216.8, 603, 703, 703.1, 703.2, 703.5 and 703.7.2.1 (improper location and height).

m.  Failure to provide the correct opening width for a forward approach into a lavatory (sink)  in violation of 2010 ADAAG §§ 305, 305.7.1, 404,  605.3 and 606.2 (trash can).

n.  Failure to provide proper knee clearance for a person with a disability under a counter or sink element in violation of 2010 ADAAG §§ 306, 306.1 306.3, 606 and 606.2

o.  Failure to provide the correct height for a table surface or for a baby changing table, in violation of 2010 ADAAG §§902, 902.1, 902.2, 902.3, and/or §4.32.4 of the 1991 ADA Standards.

**Unisex Restroom #2 (closest to 'Employee Only' door)**

p.  Failure to provide a coat hook within the proper reach ranges for a person with a disability in violation of 2010 ADAAG §§ 603, 603.4 and 308.

q.  Failure to provide the proper insulation or protection for plumbing or other sharp or abrasive objects under a sink or countertop in violation of 2010 ADAAG §§ 606 and 606.5.

r.  Failure to provide the proper spacing between a grab bar and an object projecting out of the wall in violation of 2010 ADAAG §§ 609, 609.1 and 609.3 (plumbing).

s.  Failure to provide the proper spacing between a grab bar and an object projecting out of the wall in violation of 2010 ADAAG §§ 609, 609.1 and 609.3 (toilet seat cover dispenser).

t.  Failure to provide the proper spacing between a grab bar and an object projecting out of the wall in violation of 2010 ADAAG §§ 609, 609.1 and 609.3 (toilet cleaning device).

u.  Providing grab bars of improper horizontal length or spacing as required along the rear wall in violation of 2010 ADAAG §§ 604, 604.5, 604.5.1 and 604.5.2.

v.   Providing grab bars of improper horizontal length or spacing as required along the side wall in violation of 2010 ADAAG §§ 604, 604.5, 604.5.1 and 604.5.2.

w.   Failure to provide a rear grab bar at 33 inches minimum and 36 inches maximum above the finished floor measured to the top of the gripping surface in violation of 2010 ADAAG §§ 609, 609.4 and 609.7.

x.   Failure to provide a side grab bar at 33 inches minimum and 36 inches maximum above the finished floor measured to the top of the gripping surface in violation of 2010 ADAAG §§ 609, 609.4 and 609.7.

y.   Failure to provide operable parts that are functional or are in the proper reach ranges as required for a person with a disability in violation of 2010 ADAAG §§ 309, 309.1, 309.3, 309.4 and 308 (door lock).

z.   Failure to provide toilet paper dispensers in the proper position in front of the water closet or at the correct height above the finished floor in violation of 2010 ADAAG §§ 604, 604.7 and 309.4.

aa.   Providing a swinging door or gate with improper maneuvering clearance(s) due to a wall or some other obstruction in violation of 2010 ADAAG §§ 404, 404.1, 404.2, 404.2.4 and 404.2.4.1 (trash can).

bb.   Providing an element or object that protrudes greater than 4" into a pathway or space of travel situated between 27" and 80" high in violation of 2010 ADAAG §§ 204, 307, 307.1, 307.2 (paper towel dispenser).

cc.   Failure to provide mirror(s) located above lavatories or countertops at the proper height above the finished floor in violation of 2010 ADAAG §§ 603 and 603.3.

dd. Failure to provide proper signage for an accessible restroom or failure to redirect a person with a disability to the closest available accessible restroom facility in violation of 2010 ADAAG §§ 216, 216.2, 216.6, 216.8, 603, 703, 703.1, 703.2, 703.5 and 703.7.2.1 (sign location and height).

ee. Failure to provide proper knee clearance for a person with a disability under a counter or sink element in violation of 2010 ADAAG §§ 306, 306.1 306.3, 606 and 606.2

ff. Failure to provide the correct opening width for a forward approach into a lavatory (sink) in violation of 2010 ADAAG §§ 305, 305.7.1, 404, 605.3 and 606.2 (trash can).

gg. Failure to provide toilet cover dispenser at the correct height above the finished floor in violation of 2010 ADAAG §§ 606, 606.1 and 308.

hh. Failure to provide a dispenser in an accessible position (back wall or other inaccessible place) so that it can be reached by a person with a disability in violation of 2010 ADAAG §§ 606, 606.1, 308 and 308.2.2 (toilet seat cover dispenser).

**Seating – Main Bar and Bar Area**

ii. Providing counter heights exceeding 36 inches making it impossible to service a person with a disability in violation of 2010 ADAAG §§ 904, 904.4, 904.4.1, 904.4.2, 305 and 306.

jj. Failure to provide accessible seating for person(s) with a disability at a bar or adjacent table in the bar area, recreational area or a table area adjacent to a pool for food or beverage service, or at a computer work surface such as in a business center,

in violation of 2010 ADAAG §§ 902, 902.1, 902.2, 902.3, 305, 306 and/or §4.32.4 of the 1991 ADA Standards.

kk. Failure to provide seating for a person(s) with a disability that has the correct clear floor space for forward approach in violation of 2010 ADAAG §§ 902, 902.2, 305 and 306.

ll.  Failure to provide a sufficient amount of seating when dining surfaces are provided for the consumption of food or drink for a person(s) with a disability  in violation of 2010 ADAAG §§ 226, 226.1, 902, 305 and 306.

Seating – Restaurant Indoors

mm.      Failure to provide seating for a person(s) with a disability that has the correct clear floor space for forward approach in violation of 2010 ADAAG §§ 902, 902.2, 305 and 306.

nn. Failure to provide a sufficient amount of seating when dining surfaces are provided for the consumption of food or drink for a person(s) with a disability  in violation of 2010 ADAAG §§ 226, 226.1, 902, 305 and 306.

**Seating – Restaurant Outdoors**

oo. Failure to provide seating for a person(s) with a disability that has the correct clear floor space for forward approach in violation of 2010 ADAAG §§ 902, 902.2, 305 and 306.

pp. Failure to provide a sufficient amount of seating when dining surfaces are provided for the consumption of food or drink for a person(s) with a disability  in violation of 2010 ADAAG §§ 226, 226.1, 902, 305 and 306.

72.     To the best of Plaintiff's belief and knowledge, Defendant has failed to eliminate the specific violations set forth in paragraph 71 herein.

73.     Although Defendant is charged with having knowledge of the violations, Defendant may not have actual knowledge of said violations until this Complaint makes Defendant aware of same.

74.     To date, the readily achievable barriers and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

75.     As the owner, lessor, lessee or operator of the Premises, Defendant is required to comply with the ADA. To the extent the Premises, or portions thereof, existed and were occupied prior to January 26, 1992, the owner, lessor, lessee or operator has been under a continuing obligation to remove architectural barriers at the Premises where removal was readily achievable, as required by 28 C.F.R. §36.402.

76.     To the extent the Premises, or portions thereof, were constructed for occupancy after January 26, 1993 the owner, lessor, lessee or operator of the Premises was under an obligation to design and construct such Premises such that they are readily accessible to and usable by individuals with disabilities, as required by 28 C.F.R. §36.401.

77.     Plaintiff has retained the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have his reasonable attorneys' fees, costs and expenses paid by Defendant, pursuant to 42 U.S.C. § 12205.

78.     All of the above violations are readily achievable to modify in order to bring Premises or the Facilities/Properties into compliance with the ADA.

79.     In instance(s) where the 2010 ADAAG standard does not apply, the 1991 ADAAG standard applies and all of the violations listed in paragraph 33 herein can be applied to the 1991 ADAAG standards.

80.     Pursuant to 42 U.S.C. § 12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including an order to alter the subject facilities to make them readily accessible to and useable by individuals with disabilities to the extent required by the ADA and closing the Subject Facilities until the requisite modifications are completed.

WHEREFORE, Plaintiff demands judgment against Defendant and requests the following injunctive and declaratory relief:

1.  That this Court declares that Premises owned, operated and/or controlled by Defendant is in violation of the ADA;

2.  That this Court enter an Order requiring Defendant to alter their facilities to make them accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA;

3.  That this Court enter an Order directing the Defendant to evaluate and neutralize its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow the Defendant to undertake and complete corrective procedures to Premises;

4.  That this Court award reasonable attorney's fees, all costs (including, but not limited to the court costs and expert fees) and other expenses of suit to the Plaintiff; and,

5.  That this Court award such other and further relief as it may deem necessary, just and proper.

## COUNT II
## BREACH OF CONTRACT
## (VILLAGIO OF SAWGRASS, INC.)

81.     Plaintiff adopts and re-alleges the allegations stated in paragraphs 1 through 25 above as if fully stated herein.

82.     On or about July 27, 2016, Plaintiff and Defendant entered into a Settlement Agreement and Release. (Exhibit A). Through this Settlement Agreement, Defendant agreed to make modifications to Defendant's Premises as outlined in the agreement. The Settlement Agreement and Release required Defendant to complete all modifications to the Premises by on or about July 28, 2017.

83.     Plaintiff has performed all conditions precedent to be performed by him under the Settlement Agreement.

84.     Since July 28, 2017, Defendant has failed to complete the modifications promised in the Settlement Agreement. Specifically, Defendant has failed to address the following violations:

   a.     Ensure that all gates or doors have a continuous opening pressure of no greater than 5 lbs. exceeding the limits for a person with a disability in violation of 2010 ADAAG §§ 404, 404.1, 404.2, 404.2.9 and 309.4 and/or §4.13.11 of the 1991 ADA Standards.

   b.     Ensure the proper insulation or protection in the men's restroom for plumbing under a sink or countertop in compliance with 2010 ADAAG §§ 606 and 606.5 and/or §§4.19.4 and 4.24.6 of the 1991 ADA Standards.

   c.     Ensure that there is proper spacing between a grab bar and an object projecting out of the wall in the men's restroom in compliance with 2010 ADAAG §§604,

604.5, 604.5.1, 604.5.2, 609, 609.4 and/or §§4.16.4 and 4.26.2 of the 1991 ADA Standards.

      d.     Ensure that the toilet paper dispensers in the men's restroom are in the proper position in front of the water closet or at the correct height above the finished floor in compliance with 2010 ADAAG §§604, 604.7, 309.4 and/or §4.16.6 of the 1991 ADA Standards.

      e.     Ensure that mirror(s) in the men's restroom located above lavatories or countertops is at the proper height above the finished floor in compliance with 2010 ADAAG §§ 603 and 603.3 and/or §§4.19 and 4.19.6 of the 1991 ADA Standards.

      f.     Ensure that a dispenser in the men's restroom in an accessible position (back wall or other inaccessible place) so that it can be reached by a person with a disability in compliance with 2010 ADAAG §§ 606, 606.1, 308 and 308.2.2 and/or §§4.16.6, 4.22.7, 4.27, and 4.27.3 of the 1991 ADA Standards.

      g.     Ensure the water closet in the men's restroom is in the proper position relative to the side wall or partition in compliance with 2010 ADAAG §§ 604 and 604.2 and/or §§4.16, 4.17.3 of the 1991 ADA Standards

      h.     Ensure the counter heights at the main bar do not exceed 36 inches making it possible to service a person with a disability in compliance with 2010 ADAAG §§904, 904.4, 904.4.1, 904.4.2 and/or §§4.32.4, 5.2, 5.3, and 5.4 of the 1991 ADA Standards.

      i.     Ensure seating is provided at the main bar for a person(s) with a disability that has the correct clear floor space for forward approach in compliance with 2010 ADAAG §§902, 902.2, 305, 306 and/or §§4.2.4, 4.27.2, 4.32.2, 4.5 and 4.2.5 of the 1991 ADA Standards.

85.     Plaintiff has been damaged by the Defendant's breach of the Settlement Agreement. Specifically, Plaintiff has had to retain the services of the undersigned attorney to pursue this action for breach of contract.

WHEREFORE, Plaintiff demands judgment against Defendant and requests the following injunctive and declaratory relief:

1. That this Court declares that Defendant has failed to comply with the Settlement Agreement and Release;

2. That this Court enter an Order requiring Defendant to alter its facilities to make them accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA;

3. That this Court award reasonable attorney's fees, all costs (including, but not limited to the court costs and expert fees) and other expenses of suit to the Plaintiff and as provided in the Settlement Agreement and Release; and,

4. That this Court award such other and further relief as it may deem necessary, just and proper.

**<u>COUNT III</u>**
**<u>BREACH OF CONTRACT</u>**
**(IL BELLAGIO, INC.)**

86.     Plaintiff adopts and re-alleges the allegations stated in paragraphs 1 through 7 and 26 through 43 above as if fully stated herein.

87.     On or about February 2, 2016, Plaintiff and Defendant entered into a Settlement Agreement and Release. (Exhibit B). Through this Settlement Agreement, Defendant agreed to make modifications to Defendant's Premises as outlined in the agreement. The Settlement

Agreement and Release required Defendant to complete all modifications to the Premises by on or about February 2, 2017.

88.     Plaintiff has performed all conditions precedent to be performed by him under the Settlement Agreement.

89.     Since February 2, 2017, Defendant has failed to complete the modifications promised in the Settlement Agreement. Specifically, Defendant has failed to address the following violation:

    e.     Provide the toilet paper dispensers in the men's restroom in the proper position in front of the water closet or at the correct height above the finished floor in compliance with 2010 ADAAG §§604, 604.7, 309.4.

90.     Plaintiff has been damaged by the Defendant's breach of the Settlement Agreement. Specifically, Plaintiff has had to retain the services of the undersigned attorney to pursue this action for breach of contract.

WHEREFORE, Plaintiff demands judgment against Defendant and requests the following injunctive and declaratory relief:

1.  That this Court declares that Defendant has failed to comply with the Settlement Agreement and Release;

2.  That this Court enter an Order requiring Defendant to alter its facilities to make them accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA;

3.  That this Court award reasonable attorney's fees, all costs (including, but not limited to the court costs and expert fees) and other expenses of suit to the Plaintiff and as provided in the Settlement Agreement and Release; and,

4.   That this Court award such other and further relief as it may deem necessary, just and proper.

## COUNT IV
## BREACH OF CONTRACT
### (CARPACCIO, INC.)

91.   Plaintiff adopts and re-alleges the allegations stated in paragraphs 1 through 7 and 44 through 61 above as if fully stated herein.

92.   On or about February 10, 2016, Plaintiff and Defendant entered into a Settlement Agreement and Release. (Exhibit C). Through this Settlement Agreement, Defendant agreed to make modifications to Defendant's Premises as outlined in the agreement. The Settlement Agreement and Release required Defendant to complete all modifications to the Premises by on or about February 10, 2017.

93.   Plaintiff has performed all conditions precedent to be performed by him under the Settlement Agreement.

94.   Since February 10, 2017, Defendant has failed to complete the modifications promised in the Settlement Agreement via the Defendant's ADA Expert Report. Specifically, Defendant has failed to create fully accessible unisex restrooms in accordance with items 6(a)-(d) and 7(a)-(f) of the Expert Report as well as failed to complete the following modification:

1.   Modify a minimum of 5% of the toal seating including the outdoor (patio) seating to be accessible. Accessible seating to be dispersed throughout the dining area of the restaurant and patio. Accessible seating provides a minimum of 30 inches of clear and unobstructed width, 27 inches of vertical knee clearance and 19 inches of unobstructed depth. Maintain a minimum of two (2) accessible tables adjacent to bar area (south of bar).

95.     Plaintiff has been damaged by the Defendant's breach of the Settlement Agreement. Specifically, Plaintiff has had to retain the services of the undersigned attorney to pursue this action for breach of contract.

WHEREFORE, Plaintiff demands judgment against Defendant and requests the following injunctive and declaratory relief:

1. That this Court declares that Defendant has failed to comply with the Settlement Agreement and Release;

2. That this Court enter an Order requiring Defendant to alter its facilities to make them accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA;

3. That this Court award reasonable attorney's fees, all costs (including, but not limited to the court costs and expert fees) and other expenses of suit to the Plaintiff and as provided in the Settlement Agreement and Release; and,

4. That this Court award such other and further relief as it may deem necessary, just and proper.

Dated April 12, 2022.

**Sconzo Law Office, P.A.**
3825 PGA Boulevard, Suite 207
Palm Beach Gardens, FL 33410
Telephone: (561) 729-0940
Facsimile: (561) 491-9459

By: **/s/ Gregory S. Sconzo**
GREGORY S. SCONZO, ESQUIRE
Florida Bar No.: 0105553
SAMANTHA L. SIMPSON, ESQ.
Florida Bar No.: 1010423
**Primary Email:** greg@sconzolawoffice.com

**Primary Email:** samantha@sconzolawoffice.com
**Secondary Email:** alexa@sconzolawoffice.com